**150**

MOBILE WASH OF LOUISVILLE, INC., Appellant,

v.

Sherman LOVITT, James R. Yocom, Commissioner of Labor and Custodian of the Special Fund, and Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

Opinion Rendered Feb. 17, 1978.

Rehearing Denied April 14, 1978.

Ordered Published April 28, 1978.

James M. Graves, William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellant.

Erwin A. Sherman, Louisville, for appellee Lovitt.

Cyril E. Shadowen, Asst. Counsel, Dept. of Labor, Louisville, Kenneth E. Hollis, Gen. Counsel, Dept. of Labor, Frankfort, for appellee Special Fund.

Before HAYES, REYNOLDS and VANCE, JJ.

HAYES, Judge.

This is an appeal of a judgment entered by the Jefferson Circuit Court which affirmed a decision of the Workmen's Compensation Board.

The claimant, Sherman Lovitt, was employed by Mobile Wash of Louisville, Inc. as a tank car cleaner. In the course of his employment on July 22, 1976, he was assigned to clean the inside of a tank car which contained a highly toxic chemical called P–ethoxynitro-benzene. Claimant had spent approximately three (3) hours cleaning the tank car.

Shortly after leaving work, the claimant was overcome from the effects of his exposure to the chemical and was rushed to the Emergency Room of Louisville's Norton-Children's Hospital.

At the hospital, claimant was having respiratory problems. He began to turn blue. Later, he had a convulsion and cardiac arrest. His breathing and heartbeat ceased altogether for about four (4) minutes until he was resuscitated.

Claimant's physician, Dr. James Bryan, diagnosed Lovitt's illness as being methe-

moglobienemia, a condition which prevents the blood from carrying oxygen to body organs and tissues.

Dr. Bryan testified that this condition was brought about by the interaction of claimant's blood chemistry with that of the toxic chemical in the tank car.

The medical evidence, which is uncontested by the employer, established that the claimant has received damage to his brain as a result of a work related injury which has left him totally and permanently disabled.

The Special Fund was joined in as a defendant in this action under KRS 342.-316(13)(a). The Board in its Opinion and Award of October 11, 1976, found the claimant to be permanently and totally disabled. The Board then assessed all liability against the employer and dismissed the Special Fund as a defendant therein.

Subsequently, the employer, Mobile Wash of Louisville, Inc. filed a Petition for Review with the Jefferson Circuit Court. The Board's Opinion and Award was affirmed by the Jefferson Circuit Court on May 24, 1977. Appellant, Mobile Wash of Louisville, Inc. then brought this appeal.

The question presented to this court is whether or not the claimant, Sherman Lovitt, is suffering from an occupational disease within the meaning of KRS 342.-316(13)(a) which states:

. . . In all other cases of occupational diseases, other than silicosis or any other compensable pneumoconiosis, which developed to the point of disablement only after an exposure of five (5) or more years, or for non-coal worker's silicosis and any other compensable pneumoconiosis, the compensation for disability or death due to such diseases shall be paid jointly by the employer and the special fund, and the employer shall be liable for sixty percent (60%) of the compensation due and the special fund shall be liable for forty percent (40%) of the compensation due.

Appellant contends that it was erroneous for the Board to hold it liable for 100% of the compensation due the claimant and to dismiss the Special Fund as a party defendant since the claimant's disability arose from an occupational disease.

Appellant contends that the medical evidence submitted to the Board clearly substantiates the fact that claimant is suffering from an occupational disease. Appellant's brief, for example, cites a portion of Dr. James Bryan's testimony as follows:

. . . MR. SHERMAN: Let me object to the word disease. You might ask him if this is in fact a disease.

A Yes, it's a disease resulting from a physical agent.

149 And since he was subjected to this in his employment, in his occupation and since it resulted by the method you have described, you would characterize it as an occupational disease, would you not?

A Yes. . . .

Appellee, Special Fund, contends that the Board properly found claimant's disability to have been caused by "an *injury* of appreciable proportions as the result of his *accident* of July 22, 1975," which would make the employer liable for 100% of the compensation due the claimant. Therefore, appellee, Special Fund, denies appellant's contention that the claimant has an occupational disease.

KRS 342.620(2)(a) defines occupational disease as thus:

(2) "Occupational disease" means a disease arising out of and in the course of the employment.

(a) A disease shall be deemed to arise out of the employment if there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident to the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause. The disease shall be incidental to the character of the business and not independent of the relationship of employer and employee. The dis-

**152**

ease need not have been foreseen or expected but, after its contraction, it must appear to be related to a risk connected with the employment and to have flowed from that source as a rational consequence.

In Kentucky, the earliest workmen's compensation benefits were limited to injuries which were sustained in accidents arising in the course of employment.

Occupational diseases were noncompensable, but diseases which were the direct result of a traumatic injury arising in the course of employment were compensable under an exception to this general rule. Occupational diseases did not become compensable generally in Kentucky until the enactment of KRS 342.316 in 1962, *Princess Manufacturing Company v. Jarrell*, Ky., 465 S.W.2d 45 (1971).

Occupational diseases have long been held under Kentucky law to be those diseases which are developed gradually and which are not sudden in their onset, *Kentucky Stone Company v. Phillips*, 294 Ky. 576, 172 S.W.2d 216 (1943).

It is obvious to this court that Lovitt's disability is not the result of an occupational disease; but it is instead the result of a sudden traumatic injury.

KRS 342.620(2)(a) requires that for a disease to be an occupational disease it must be seen "to have followed as a natural incident to the work as a result of the exposure occasioned by the nature of the employment".

In this case, Lovitt's sudden massive exposure to the toxic chemical was accidental and unforeseen. It was not a natural incident of his employment. It was an unnatural occurrence. Otherwise, who would seek such an occupation?

Larson has contrasted occupational diseases with accidental injuries as follows:

. . . the two crucial points of distinction between accidental and occupational disease were the element of unexpectedness and the matter of time-definiteness. What set occupational diseases apart from accidental injuries was both

the fact that they could not honestly be said to be unexpected, since they were recognized as an inherent hazard of continued exposure to conditions of the particular employment, and the fact that they were gradual rather than sudden in onset. Thus, what would ordinarily be an occupational disease might be converted to an accident by an unusual and sudden dosage of the same kind of dust or fumes that, absorbed gradually over a long period, would produce typical industrial disease. (A. Larson, *Workmen's Compensation Law*, § 41.31 (1975)).

Therefore, the appellant must be held totally responsible for the compensation paid to Lovitt since his disability is not the result of an occupational disease.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.